## CORSE BROTHERS v. SANFORD.

1. INSTRUCTION: CONCLUSIVENESS OF JUDGMENT. On the trial of a motion for execution against a railroad company, with a clause directing its levy upon the private property of one of the stockholders, the judgment against the company is conclusive as to the indebtedness of the company to the plaintiff at the time at which it was rendered, but it is competent for the defendant to show that it has been paid or discharged. It was not error

to instruct the jury that such indebtedness must exist to charge the stockholders.

2. INSTRUCTION: RELEVANCY. The relevancy of an instruction to the issue and evidence, on the trial of such a motion, considered and discussed.

3. EVIDENCE: COPY. To authorize the admission of a copy of a railroad subscription book in evidence for the purpose of charging a stockholder, it is not sufficient to show a loss of the original on diligent search therefor. The genuineness of the signature to the original must also be established.

*Appeal from Dubuque District Court.*

WEDNESDAY, DECEMBER 10.

PLAINTIFFS being judgment creditors of the Dubuque and Pacific Railroad Company, issued an execution, which was returned, " no property found." They then moved for an execution, with a clause directing its levy upon the private property of the defendant, an alleged stockholder. He appeared and resisted the motion, denying that he ever subscribed stock as charged. Upon this issue there was a trial by jury — verdict for defendant, and plaintiffs appeal.

*Allison & Crane* and *Thomas M. Munroe* for appellant.

As to the first point determined in the opinion of the court, cited *Donworth* and *Behan* v. *Coolbaugh et al.*, 5 Iowa, 304; *Hampson et al.* v. *Weare et al.*, 4 Id., 16; *Hindman* v. *Mackall*, 3 G. Greene, 171; *The State* v. *Lighton*, 4 Id., 280; 1 Greenl. Ev., § 502 and note; as to the second point, *Russ et ux.* v. *The Steamboat War Eagle*, 9 Iowa, 375; *Robinson* v. *Chapline*, Id., 91; *Napper* v. *Young*, 12 Id., 450; as to the last point, *Holmes* v. *Marden*, 12 Pick., 168; *Remboth* v. *Zeilee River Improvement Company*, 29 Penn., 139; *Doe ex dem. Rowlandson* v. *Wainwright*, 5 Adolph. & Ellis, 521; *Munn* v. *Gobboll*, 3 Bing., 292; *Rex* v. *Hunter*, 4 Car. & P., 127.

*Cooley* and *Wiltse & Blatchley* for appellee.

WRIGHT, J.— The giving of the following instruction, at the request of defendant, is assigned. as error.: " To charge the defendant, you must find that the Dubuque and Pacific Railroad Company are indebted to plaintiff."

As a legal proposition this is unquestionably correct. For if plaintiffs were not creditors they had no standing in court, to compel defendant to pay his alleged subscription. But it is insisted that the question of indebtedness was fully disposed of in the action against the company, and that it cannot be re-examined in this collateral proceeding. This is very true, and yet this judgment. may have been paid. The instruction looks to such indebtedness at the time of instituting this proceeding, and by no fair construction would it warrant the jury in inquiring into the validity of the judgment. Not only so, but this instruction was given, apparently, not because there was any controversy as to this part of the case, but as an admitted proposition in the statement of the case to the jury. For the indebtedness of the company was abundantly established, neither party controverting it, but directing their whole testimony to the genuineness or existence of defendant's alleged subscription.

2. It is next urged that this instruction was erroneous: "Under the issue it is incumbent upon the plaintiffs to show that sometime in 1853, defendant subscribed $4,000 of the stock, on which was due and properly called in by the company the sum of $3,500." While it is true that a party may recover an amount less than that claimed, and though the contract may not have been made on the day stated in the petition, we are still satisfied that this instruction, as applied to this case, was correct. Plaintiffs expressly allege a subscription in 1853, for $4,000, upon which there was due and unpaid $3,500. Defendant denies this subscription. He admits that if he owes anything he is liable for the whole amount claimed. All of the testimony was

directed to the issue as thus made. True, some evidence
was offered that one Jessup, in the name of defendant, had,
at a public meeting, subscribed two thousand dollars in
addition to the four thousand. But plaintiffs did not insist
upon the validity of that subscription, or claim anything
from it. Such then, being the state of the record, and the
issue presented, this instruction was but a statement of the
very matter to be tried, the very controverted point, and
as such, was not objectionable.

3. The fourth instruction, in informing the jury that
"it must satisfactorily appear that there was a genuine
subscription by defendant," does not, as argued by appel-
lant, necessarily imply that he must have subscribed for
the stock with his own hand. A subscription by an agent
would be genuine within the meaning of this instruction.
And that defendant might thus be made liable is clearly
stated in other instructions given.

In like manner, appellants misconstrue the fifth instruc-
tion asked by defendant. It is by no means a charge upon
the facts within the meaning of *Russ* v. *War Eagle*, 9 Iowa,
375, and the other authorities cited.

4. The last error argued, and the one seemingly most
relied on, relates to the rejection of certain testimony, to
wit: what purported to be a copy of a lost stock book, or
subscription list. It seems that after diligent search, the
original paper or book which it was claimed was signed by
defendant could not be found. A paper was shown to a
witness who testified that he had copied the names, except
the last five, from a paper or book handed him by the
attorney and agent of the company. And it is the action
of the court in rejecting this copy which is now assigned
as error. For several reasons we think this ruling was
correct. In the first place, we cannot see how the testi-
mony could be either pertinent or material. The fact in
controversy was not so much whether defendant's name

was to a subscription, as whether he signed or authorized it. To prove this, the copy offered was of no kind of importance. It only showed that the name was on the paper copied, and not that the original was genuine. The genuineness of the original paper once established, its contents might be proved by a duly verified copy. But if there was no true original, the copy was worthless. And if it was shown that there was a genuine original, the copy was immaterial.

Again, the witness stated that the paper offered was not all copied by him. The caption, or that which contained the undertaking of the subscribers, and a portion of the names, were in the handwriting of another person.

Not only so, but this was a question for the court, and in no event would the copy be admissible until it was sufficiently established that defendant's accountable signature was to the original paper. And if the court rejected the supposed copy, upon this ground, we are not prepared to say there was such error as to justify our interference. The testimony was neither clear nor satisfactory upon this subject.

The case of *Holmes* v. *Marden*, 12 Pick., 168, is not like this. There, an account book had been burnt, and the account produced was proved to be a correct transcript of the items. The testimony, however, showed that the entries actually existed in the day-book, were transferred to the ledger, and transcribed therefrom. The existence of the original subscription list in this case, was the principal fact to be established, and the supposed copy in no manner tended to prove it. The other cases cited by counsel only go to the point that where the original is lost, secondary evidence of the contents of the paper (by sworn copy, or the like), is admissible. This proposition is admitted in all its strength, and still it cannot aid appellant in this case. Affirmed.